UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:09-CR-5-R

UNITED STATES OF AMERICA                                                                PLAINTIFF

V

ASO POLA                                                                                DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Aso Pola's motion to vacate pursuant to 28 U.S.C. §2255. (DN 77). The United States has filed a response. (DN 94). Pola filed a reply. (DN 95). The Court held an evidentiary hearing in this matter on November 16, 2015. (DN 161). Dena Legg was the court reporter. The parties have filed supplemental briefing on this issue. (DN 168, 171, 173). The Court being sufficiently advised, for the following reasons, hereby GRANTS Pola's motion to vacate.

BACKGROUND

Pola was charged with knowing and intentional possession of oxycodone with the intent to distribute in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). (Docket #1, 11). Pola was originally represented by Brian Davis. (DN 7). For all times pertinent to this motion, Pola was represented by C. Fred Partin. (DN 18).

On December 12, 2008, this Court ordered that Pola be detained pending trial. (DN 8). Pola was detained until September, 2009. At that time, Pola entered a plea of guilty taken pursuant to *N. Carolina v. Alford*, 400 U.S. 25 (1970). (DN 50). On September 20, 2009, Pola filed an unopposed motion to revoke this Court's detention order and to conditionally release

1

Pola. (DN 47). That motion stated: "It is contemplated by the parties that at the time of entry of guilty plea the defendant would have enough time credit under the anticipated sentencing scenario that at sentencing he would have otherwise served out the term of his sentence, but would still be subject to a term of Supervised Release."[1] (DN 47). The Court granted Pola's motion and released him on his own recognizance. (DN 50).

On February 16, 2010, Pola was sentenced to a term of imprisonment of forty-six months. (DN 55). Pola was immediately remanded to the custody of the United States Marshals. Approximately two months after Pola was sentenced he filed a *pro se* appeal. (DN 59). Pola requested that he be permitted to file a late appeal because he had requested that his counsel file an appeal and counsel did not do so. The Sixth Circuit denied Pola's request and dismissed Pola's appeal because it was not filed within fourteen days of the date of entry of judgment. (DN 73).

Pola then filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel, among other claims. Pola argues his attorney was ineffective for failing to timely file an appeal after Pola requested one. Magistrate Judge Moyer appointed new counsel for Pola and scheduled an evidentiary hearing for October 17, 2012. (DN 98). However, before this hearing was held, the Bureau of Prisons released Pola. Pola, who was born in Iraq and is a citizen of Canada, was transferred to the custody of Immigration and Customs Enforcement ("ICE"). ICE removed Pola to Canada, preventing him from attending the evidentiary hearing. Following Pola's deportation, the district court ordered the parties to submit affidavits addressing Pola's ineffective assistance of counsel claim. (DN 135). Magistrate Judge

---

[1] The United States disagrees with this view of the parties' understanding at that time. (DN 161, p. 22).

Moyer recommended the denial of Pola's § 2255 motion and the denial of Pola's request for an evidentiary hearing. (DN 139). Pola objected to the denial of his § 2255 motion without an evidentiary hearing. (DN 142). The Court adopted Magistrate Judge Moyer's report and recommendation and denied Pola's § 2255 motion and his request for an evidentiary hearing. (DN 143).

Pola appealed to the Sixth Circuit Court of Appeals. (DN 145). The Sixth Circuit vacated this Court's judgment and remanded the case for the purpose of conducting an evidentiary hearing on Pola's § 2255 motion. *Pola v. United States*, 778 F.3d 525 (6th Cir. 2015). On November 16, 2015, this Court conducted an evidentiary hearing. (DN 161). The parties have supplemented their briefing on Pola's § 2255 motion. (DN 168, 171, 173). This matter is now ripe.

## STANDARD

A prisoner may request that his sentence be set aside on the grounds that it was "imposed in violation of the Constitution or laws of the United States." 28 USCS § 2255(a). "The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction," but only "when the error qualifies as a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Slater v. United States*, 38 F. Supp. 2d 587, 589 (M.D. Tenn. 1999) (*quoting Reed v. Farley*, 512 U.S. 339 (1994)).

The "right to counsel" implies the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Under *Strickland*, a "petitioner must make two showings to qualify for relief: (1) 'that counsel's performance was deficient'; and (2) 'that the deficient performance prejudiced the defense.'" *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). "An attorney's performance is deficient if

3

'counsel's representation fell below an objective standard of reasonableness.'" *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688) ("counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 694.

## DISCUSSION

"We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id*.

Before the Court is Pola's claim that his attorney, Partin, was ineffective for failing to file an appeal even though Pola requested one. In response, Partin claims that he does not recollect Pola requesting an appeal and that Partin would have filed an appeal if he had been so instructed. Both Pola and Partin have filed affidavits on this issue. (DN 136, 138). The Court has conducted an evidentiary hearing and heard testimony from both Pola and Partin. (DN 161). The parties have also briefed this issue. (DN 168, 171, 173). For the following reasons, the Court finds that Pola has established that he requested an appeal and this request was not carried out by Partin.

At the outset, the Court notes that both Pola and Partin have provided credible testimony as to Pola's sentencing hearing and the subsequent events. Pola was detained for nine months

4

following his arrest.  Partin successfully moved to have Pola released from detention in September, 2009.  (DN 50).  Both Pola and Partin say they anticipated that when Pola returned to court for sentencing he would receive time served and be able to return home.  (DN 161, p. 8, 29).  Both say they were surprised and upset at the length of the sentence Pola received.  Pola and Partin were further surprised when an ICE officer informed the Court that ICE would seek an immigration hold on Pola.  (DN 161, p. 29-30).

There were two opportunities for Pola to request an appeal.  First, Pola could have made this request while he and Partin were still in Court following Pola's sentencing.  The Court finds that this likely did not happen.  Partin testified firmly that "[n]owhere while he was in this court or in the courtroom in which we were sentenced -- he was sentenced did he say anything about filing an appeal."  (DN 161, p. 30).  Conversely, Pola testified that he was very upset while in court and could not remember with certainty whether he instructed Partin at that time to file an appeal. (DN 161, p. 19). ("I was very upset.  Be honest with you, I don't remember right then if I say it or not.").

The second opportunity for Pola to request an appeal occurred the night of sentencing.  Immediately after his sentencing hearing Pola was taken to the Grayson County jail.  Partin recalls that Pola called him from jail.  Partin also recalls that "we did have a discussion on the phone that night to the effect, you know, what happened, what can we do, whatever, something like that."[2]  (DN 161, p. 31).  While Partin did not remember the exact details of that call, he did claim that he would have filed an appeal if Pola had so instructed.  Conversely, Pola testified that

---

[2] In his affidavit, Partin does not mention this call, but does state:  "I have no recollection of and do not believe that Mr. Pola ever advised me or instructed me to file a Notice of Appeal on his behalf."  (DN 138).

5

while "I don't remember 100 percent if I tell him [to file an appeal] right then [in court]. But I know in jail I told him 100 percent." (DN 161, p. 18).

The Court finds there are several factors which support Pola's contention that he made a request for Partin to file an appeal while they talked the night of his sentencing. First, the speed with which Pola filed his *pro se* appeal—approximately two months after sentencing— indicates he always desired to appeal his sentence. Pola claims he "learned in April 2010 that Mr. Partin had not filed a notice of appeal" and "immediately prepared my own papers and filed them." (DN 136). This is further supported by the fact that in his notice of appeal, Pola claimed that he had requested his attorney file an appeal and that his appeal was untimely because of negligence and ineffective assistance of counsel. (DN 49). Furthermore, after filing his *pro se* appeal Pola sent Partin a letter requesting he withdraw his representation as "[i]t is clear that we have a major conflict and thus you cannot continue representing me." (DN 138).

The nature of Pola's plea also supports his contention that he would have appealed his sentence. Pola entered an *Alford* plea. "[A]n 'Alford plea' refers to a defendant who pleaded guilty but maintained that he is innocent." *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995). In Pola's words: "The whole reason I plead an *Alford* plea, because my lawyer told me I will get convicted, and if you plead an *Alford* plea, you will get time served. So my understanding that I will get time served and I go back to my family, which has been nine month, 12 days without an income." (DN 161, p. 9). On cross-examination, Pola admitted that he was instructed about the consequences of his plea and the possibility of a greater sentence, but said: "my lawyer promises me I'm going home. So whatever the judge asks me, I will just try to proceed with the court so I can go home." (DN 161, p. 12). It is clear from both Pola and

6

Partin's[3] testimony that Pola believed he would receive time served and was very upset when he was sentenced to forty-six months. Pola would have had ample incentive to file an appeal after being sentenced to forty-six months when he expected to return to his family that day.

While the Court finds Partin's testimony to be credible, that does mean it foreclosed all possibility that Pola requested an appeal. Partin states he has "no recollection of and do[es] not believe that Mr. Pola ever advised me or instructed me to file a Notice of Appeal on his behalf." (DN 138). Partin bases his memory on the fact that he routinely complied with such requests and "I would think that I would remember such an event because it would have followed a fully vetted guilty plea and sentencing hearing." (DN 138). In comparison, Pola states that he is "100 percent" certain that he instructed Partin to file an appeal. (DN 161, p. 18).

Partin testified that he "did not believe there was any procedural or substantive basis for an appeal" and that he would have been obligated to file an *Anders* brief if Pola appealed. (DN 161, p. 32); *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 438–39 (1988) (explaining that counsel may withdraw if they evaluate an appeal, conclude it would be frivolous, and brief the court as to anything in the record which could arguably support an appeal). Given Partin's low opinion[4] regarding the success of an appeal, he would have been less likely to attach significance to any discussion with Pola regarding an appeal.

---

[3] Partin testified:

> He was upset and I was upset, because we had both had hopes -- and I don't know if I'd say expectation -- but I thought we had a very good and reasonable argument that given the time he had already spent in custody and given the other facts of the case, that we had a very persuasive argument to the court that he should be continued out of custody and on supervision. (DN 161, p. 29).

[4] The likelihood of success of an appeal is irrelevant at this time. "[E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).

Comparatively, Pola had just learned that he would unexpectedly be imprisoned for the next several years. Pola had both a strong incentive to appeal and strong emotional prompt for this memory. Pola would also be less aware of the likelihood of success of any appeal and therefore more likely to attach significance to one.

For the foregoing reason, the Court finds that Pola requested that his counsel file an appeal and this request was not completed. Accordingly, the Court will vacate the previously entered judgment and enter a new judgment from which Pola may appeal. *Ludwig*, 162 F.3d at 459; *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *Estes v. United States*, 883 F.2d 645, 649 (8th Cir. 1989) ("Should the District Court determine that appellant is entitled to relief, the prior judgment of conviction and sentence should be vacated and a new judgment entered which would enable Estes to appeal therefrom after such entry"). Pursuant to Fed. R. App. P. 4(b)(1), Pola's "notice of appeal must be filed in the district court within 14 days" of "the entry of either the judgment or the order being appealed."

## CONCLUSION

IT IS HEREBY ORDERED that Pola's motion to vacate (DN 77) is GRANTED. The Court VACATES its previously entered judgment. (DN 55). A new judgment will be entered.

A telephonic status conference is set for August 5, 2016 at 10:00 a.m. Eastern Time. The Court shall initiate the call.